AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

FILED
FEB 12 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

United States of America
v.
Jessica Angelina Bonnie Pipitolu

*Defendant(s)*

Case No. 3 19 70220 LB

CR 19-95 WHA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 10, 2019 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. Section 841(a)(1), (b)(1)(B) | Possession with intent to distribute a controlled substance<br><br>Maximum 40 years term of imprisonment; Maximum fine: $5,000,000; Maximum term of supervised release of life; Mandatory $100 special assessment; Mandatory minimum term of imprisonment: 5 years; Mandatory minimum supervised release 4 years |

This criminal complaint is based on these facts:

Please see attached affidvait of U.S. Department of Homeland Security Special Agent Ricardo Haro

☑ Continued on the attached sheet.

*Complainant's signature*

Ricardo Haro, HSI Special Agent

*Printed name and title*

Approved as to form AUSA Lina Peng

Sworn to before me and signed in my presence.

Date: 02/12/2019

*Judge's signature*

City and state: San Francisco, California

Hon. Laurel Beeler, Magistrate Judge

*Printed name and title*

To file under seal! LBC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: JESSICA ANGELINA BONNIE PIPITOLU

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Ricardo Haro, do swear and affirm as follows:

## I. INTRODUCTION AND PURPOSE FOR AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against JESSICA ANGELINA BONNIE PIPITOLU for possession with intent to distribute a controlled substance, specifically, methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The statements contained in this affidavit are based on my experience and training as a Special Agent and the information provided to me by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that PIPITOLU violated Title 21, United States Code, Section 841(a)(1) and (b)(1)(B).

## II. AGENT BACKGROUND

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I have been employed as a Special Agent for the Department of Homeland Security, Homeland Security Investigations (HSI), since 2015. As an HSI Special Agent,

I am a customs officer within the meaning of Title 19, United States Code, Sections 1401(i), and 1589a. Pursuant to Title 19, United States Code, Sections 482 and 1582, and various federal regulations, I am thus empowered to border search items being imported into the United States from outside the United States.

4. I am currently assigned to the office of the Resident Agent in Charge, San Francisco International Airport (SFIA). I have successfully completed the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training program at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.

5. During my training at FLETC, I received instruction in varied topics, including federal criminal statutes, rules of criminal procedure and evidence, and investigative techniques.

6. Prior to this position, I was employed as a U.S. Immigration and Customs Enforcement (ICE) Immigration Enforcement Agent, assigned to San Francisco Field Office for five years. As part of my training as an ICE agent, I received instruction in preventing the illegal trafficking of people, narcotics, and contraband into the United States. I received instruction in different techniques and concealment methods that are used to smuggle persons, prohibited goods, illegal drugs and other contraband into the United States.

7. I have participated in local and federal search warrants and arrests involving narcotics trafficking. I am responsible for enforcing federal criminal statutes, including violations of Title 18 and Title 21 of the United States Code. I have

participated in narcotics investigations involving the seizure of, among other things, MDMA, methamphetamine, cocaine, narcotic analogues, firearms, and currency.

8. I have had discussions with other law enforcement officers and agents about the production and packaging of illegal narcotics, the methods used to sell narcotics, and security measures utilized by individuals involved in the distribution of illegal narcotics. I have examined customer and supplier lists commonly referred to as "pay/owe" sheets, and other documentation and indicia associated with the distribution of illegal narcotics. I have become familiar with the methods used by drug traffickers to import, transport, and distribute drugs, and the methods used by drug traffickers to communicate with each other in furtherance of their illegal activities.

## III. APPLICABLE LAW

9. Under Title 21, United States Code, Section 841(a)(1), Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, to wit: methamphetamine, a Schedule I substance.

## IV. FACTS ESTABLISHING PROBABLE CAUSE

10. I am familiar with the facts set forth in this Affidavit from my personal inquiries and investigations by other law enforcement officers and/or analysts as related to me in conversation and/or through written reports, and/or from records and/or documents and/or other evidence obtained as a result of this and related investigations. I have also obtained such information from records, documents, and other evidence obtained as a result of this investigation. Unless otherwise indicated herein, I believe the

information provided to me by others to be reliable. In those instances wherein I assert an opinion or belief with respect to the facts alleged herein, that opinion or belief is based upon my training and experience as set forth previously herein, along with my knowledge of this investigation and any other specific factors I submit in connection with a particular assertion.

11. I have only set forth those facts that I believe are essential to establish probable cause. The facts and opinions set forth herein are not meant to include of all information gathered with regard to the subject identified herein or the investigation in general; rather, these facts are meant to provide information sufficient for the purpose of this affidavit.

Rakesh ROSHAN Flees Security Checkpoint at San Francisco Airport

12. On February 5, 2019, I was notified of an incident involving a passenger fleeing from a Transportation Security Administration checkpoint prior to entering the sterile area of the terminal at San Francisco International Airport (SFIA). According to the incident report, on February 1, 2019, at approximately 10:50 pm, a passenger later identified as Rakesh ROSHAN [redacted] attempted to enter the sterile area of the International Terminal at SFIA. When ROSHAN entered the body scanner at the security checkpoint, an anomaly was detected in his groin area, and ROSHAN was directed to a pat-down area. ROSHAN immediately turned around and ran away from the checkpoint in the direction of the parking garage, leaving his belongings behind. The Transportation Security Administration was able to identify ROSHAN based on the United States passport (number [redacted], bearing the name Rakesh ROSHAN) he

presented as part of the screening process. Agents entered a request into law enforcement databases to be notified of future travel reservations for ROSHAN.

13. On February 6, 2019, ROSHAN boarded a flight from San Francisco Airport to Australia.

14. On February 9, 2019, I was notified that ROSHAN had an active reservation to travel from San Francisco Airport to Sydney, Australia. Additional research by United States Customs and Border Protection (CBP) revealed ROSHAN was still in Australia and had not returned to the United States. Research also revealed Jessica Angelina Bonnie PIPITOLU [redacted] who had previously identified herself as ROSHAN's girlfriend during her admission interview into the United States with CBP on January 21, 2019, was scheduled to depart the United States on February 10, 2019, onboard United Airlines flight 863, with the final destination of Sydney, Australia.

15. Jessica PIPITOLU is a citizen of New Zealand, with two previous admissions into the United States: on January 21, 2019; and February 7, 2019. During the latest arrival, PIPITOLU entered the United States with co-traveler Sati Santoshi SEN [redacted]

<u>Outbound inspection of Jessica PIPITOLU and Sati Santoshi SEN</u>

16. On February 10, 2019, at approximately 10:50 pm, agents made arrangements to intercept and inspect PIPITOLU on the jetway prior to her boarding flight 863 to Sydney. When they encountered her, PIPITOLU was with SEN, and Customs and Border Protection conducted an outbound inspection of the two on the jetway. While agents were interviewing SEN, CBP Officer Ni searched PIPITOLU. CBP. Officer Ni indicated that during the partial body search of PIPITOLU, an anomaly

was found near PIPITOLU's groin area. When CBP Officer Ni asked PIPITOLU what the anomaly was, PIPITOLU replied "drugs". CBP Officer Ni then noticed an anomaly inside PIPITOLU's neck pillow and discovered a small plastic bag containing a crystal-like substance. PIPITOLU and SEN were placed into handcuffs and escorted to the personal search room, where PIPITOLU removed the plastic-wrapped suspected narcotics from her vagina. Both substances were field tested by CBP Officer Reyes. The tests yielded presumptive positive results for the characteristics of methamphetamines. The weight of the drugs was 113 grams from PIPITOLU's vagina, and 35 grams inside the travel pillow, for a total of 148 grams.

Case 3:19-cr-00095-WHA Document 1 Filed 02/12/19 Page 8 of 9



7

## V. CONCLUSION

23. Based on the aforementioned facts and information, there is probable cause to believe that on February 10, 2019, in the Northern District of California, Jessica Angelina Bonnie PIPITOLU knowingly possessed 148 grams of methamphetamine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Ricardo Haro, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement

Subscribed and sworn before me on:

Feb 12, 2019
Date

HON. LAUREL BEELER
U.S. MAGISTRATE JUDGE